UNITED STATES BANKRUTCY COURT
DISTRICT OF MINNESOTA

In Re:                                             Bankruptcy No.: 14-40436
                                                   In Proceedings Under Chapter 12

Jesse and Lucy Hagemeier,
    Debtors.

**SECOND MODIFIED CHAPTER 12 PLAN OF REORGANIZATION
DATED JULY 14, 2014**

The Debtors propose the following Plan for the adjustment of their debts:

ARTICLE I
Summary of the Plan

This Plan shall continue for a period of five (5) years from its effective date. The property of the Debtors is being valued, and the claim of each secured creditor is being treated as secured in the amount of value of the property securing such claim. Cost of administration are being paid on the effective date of the Plan unless otherwise agreed to or directed by the Court. Priority claims are being paid in full as allowed. The Debtors will pay the Trustee no less than all disposable income, as that term is defined in 11 U.S.C. Section 1225, for the Trustee administration and distribution to unsecured creditors. The deficiency claims of all secured creditors will be treated as unsecured claims unless otherwise ordered by the Court.

ARTICLE II
Definitions

1. "Creditors" means all entities having a claim against the Debtors.
2. "Secured Creditor" means a creditor with a lien or security interest in property of the Debtors.
3. "Claim" means a timely filed claim which has been allowed by the Court or a secured claim which is dealt with in the Plan whether or not a claim is filed.
4. "Effective Date" means the date on which the Order of Confirmation becomes final.
5. "Trustee" means the Chapter 12 Trustee.
6. "Disposable Income" means all income received by the Debtors annually after deducting operating expenses, living expenses (salaries approved) and Plan payments.

ARTICLE III
Property Valuations

The debtors propose to value their property as set out in their Petition under Chapter 12 filed January 31, 2014.

ARTICLE IV
Liquidation Test

The Debtors net equity in their property after deducting for secured claims and exemptions is sufficient to pay all creditors in full. Therefore the relief sought is related to cash flow and not debt reduction.

ARTICLE V
Disposable Income and Living Expenses

The Debtors submit their personal living expenses to be $40,000.00 per year. After said living expenses and normal costs of operation it is projected that $171,000.00 will be available per year to service debt. For the term of this plan, all of the debtors' disposable income regardless of the amount will be paid to the trustee for payment of cost of administration and distribution to unsecured creditors. (See Exhibit A)

ARTICLE VI
Classification and Treatment of Claims

1. **Class I**. Costs of Administration. This class included compensation and expenses of professionals and court costs and all expenses incurred by the Debtors after the filing of his petition and before the entry of the order of confirmation and expenses of professionals and court costs, shall be paid in full on the effective date of the Plan. Claims for compensation and expenses of professionals and court costs shall be paid upon approval by the Court and as directed by the Court. The Chapter 12 trustee shall make application to the court for approval of trustee's fee and for any reasonable and necessary expenses of the trustee in effectuating the trustee's duties under the Bankruptcy Code in administering this case. The debtors shall pay an amount equal to five percent (5%) of all payments disbursed by the Chapter 12 trustee as an estimated payment and the trustee shall hold the fee until the trustee's fees and expenses are applied for and approved by the court. Once the trustee's fees are approved, the trustee shall pay them. If there are excess funds in the account at the end of the case, the money shall be paid to the unsecured creditors and any excess after paying the unsecured creditors shall be paid to the debtors, unless otherwise ordered by the Court.

SECURED CLAIMS

2. **Class II**.    Class 2 is a fully secured claim of Rabo Agri Finance in the approximate amount of $33,982.00. Creditor shall retain its lien and shall be paid its allowed secured claim over 5 years at 4.00% interest beginning the month following the confirmation of this plan. Payments shall be $626.00 per month. Payments shall be made through the trustee.

**Class II.A**    Class 2A is the fully secured claim of Agri Credit Acceptance, LLC in the approximate amount of $168,281.00. Creditor shall retain its security interest and be paid its allowed claim over 11 years at 4.00% interest beginning the month following the confirmation of this plan. Payments shall be $1575.92 per month. Payments shall be made through the trustee.

      3.    **Class III.**    Class 3 is the fully secured claim of AMPI in the approximate amount of $18,232.00.  Creditor shall retain its security interest and shall be paid its allowed secured claim over 10 years at 3.00% interest beginning 30 days after confirmation of the plan.  Payments shall be $176.05 per month.  Payments shall be made through the trustee.

      4.    **Class IV**.    Class 4 is the fully secured claim of Bremer Bank in the approximate amount of $246,418.00 secured by debtors' real estate valued at approximately $1,252,000.
Creditor shall retain its security interest and shall be paid its allowed secured claim as follows:
   a. Interest rate on the unpaid balance shall 5.50% per annum.
   b. Payments shall be based on a 20 year amortization amount amounting to $ 1695.00 per month beginning the month after the confirmation of this plan.
   c. The indebtedness shall balloon in 5 years, at which point the entire unpaid balance will be immediately due and payable.
   d. In the event of default, Bremer shall have the right to immediate relief from the bankruptcy stay provided that they have first given notice to debtors of said default and have allowed 10 business days from the receipt of such notice to allow the debtors to cure the default.
   e. Unless modified by this plan, the plan incorporates the nonmonetary covenants set forth in the loan documents.

Payments shall be made through the trustee.

      5.    **Class V.**    Class 5 is the fully secured claim Central Minnesota Credit Union (herein after CMCU) in the approximate amount of $681,000.  CMCU has a first secured position in excavating equipment with the approximate value of $746,685.00, cattle with the approximate value of $400,000 and farm machinery with an approximate value of $435,000.00.  Creditor shall retain its security interest and be treated in the plan as follows:

   a. Interest on any unpaid balance shall accrue at the rate of 5 ¾% per annum.

   b. Residential property located in Morrison County, city of Little Falls, shall be abandoned to CMCU either via deed in lieu of foreclosure or by the CMCU foreclosure by action at the CMCU choosing.  If requested, debtors will consent to sign a voluntary foreclosure agreement.  The indebtedness attributable to this property will be deemed settled in full via this transfer and no claim or deficiency on costs shall accrue to debtor.

   c. Two pieces of equipment, namely a Caterpillar D6R Dozer and a Caterpillar 330BL Excavator, will be surrendered to CMCU at noon on July 11, 2014.  CMCU will coordinate the transportation of the equipment and the Debtors will cooperate in making the equipment available.  The equipment will be sold by CMCU with the sale proceeds applied against its secured claims.

d. Beginning the month after confirmation of this plan debtor shall pay $6000 per month to CMCU to be applied to the remaining balance of debtor's indebtedness. All remaining indebtedness shall be due and payable in full at the end of five years from the date of the confirmation of this plan.

e. CMCU shall have the right to immediate relief from the bankruptcy stay in the event of default provided that they have given notice to the debtor of said default and have allowed ten business days from the receipt of such notice to allow the debtors to cure. In the event that the debtors fail to cure, any liquidation of collateral shall take place within the Chapter 12 proceeding and shall begin with the liquidation of the excavation equipment as listed on Schedule B of debtor's petition followed if necessary by the liquidation of cattle without further order of the court or notice and finally followed if necessary by the liquidation of farm equipment without further court order or notice.

f. For the duration of this Chapter 12 debtor agree to the following information reporting to the CMCU to be due on a monthly basis by the tenth business day of each month for the proceeding month's information:
   All reports required by the trustee shall be copied to the CMCU
   All reports called for in the cash collateral stipulation paragraph 19 not already included in the reports to the trustee.

g. CMCU shall have the right to physically inspect and inventory its collateral and shall be given reasonable access for such inspection with a minimum of 48 hours notice.

h. Unless modified by this plan, the plan incorporates the nonmonetary covenants as set forth in the loan documents.

Payments shall be made through the trustee.

6. **Class VI.** Class 6 is the fully secured claim of Sauk River Watershed District. The approximate amount of $384,437.00 which consists of an assessment for watershed improvements and which is paid in semi annual installments with the debtor's real estate taxes. The Sauk River Watershed District will retain its lien and claim of the Sauk River Watershed District is not modified or affected by this plan. Payments shall be paid directly by debtors.

7. **Class VII.** Class 7 is the fully secured claim of Aaron Miller by virtue of a Judgment Lien on non-exempt property, in the amount of $12,230.00. This class shall be paid over 10 years at the rate of $120.04 per month with interest at the rate of 4.00%. Payments shall be made through the trustee.

8. **Class VIII.** Class 8 is an Essential Unsecured Creditor. Munson Feeds is an unsecured creditor owed $28,208.00 and is essential to the continuation and success of the farming operation and therefore shall be paid without interest over the first 2 years of the plan at the rate of $1058.00 per month. Payments shall be made through the trustee.

9. **Class IX.** Class 9 shall consist of all general unsecured creditors with the exception of Munson Feeds who have timely filed claims.  Creditors who fail to timely file a claim shall receive no funds under this plan and shall be fully discharged upon completion.  Any reference to unsecured creditors in this plan shall only refer to those who file valid and timely claims.  Claims of all unsecured creditors which are a result of damages arising as a result of the rejection of unexpired leases and/or executory agreements, claims of all unsecured creditors which are the result of the value of a secured claim being of a value less that the security held against such claim, and/or those secured creditors whose claims are determined to be unsecured, claims of all accommodation parties and co-makers or loans of which the debtors are the principal, claims of all lienholders against property of the estate but not arising from debts of the estate, and claims for taxes and penalties which are not included in Class I above.

 This class shall be paid in full thru the trustee with disposable income.  At a minimum, Debtors shall pay $2500.00 per month to the Trustee for this class which amount shall be reviewed annually  .If by the end of year four (4) disposable income appears insufficient to fully pay this class it is the Debtors intention to liquidate assets to fulfill the commitment to pay this class in full.

 10. **Class X.** Class 10 shall consist of real estate taxes which are delinquent in the amount of approximately $44,000.00 which includes the assessment which constitutes the payment to the Sauk River Watershed District whose claim and treatment is described in Class VI above.  Delinquent taxes shall be paid over 4 years in payments of $917.00 per month through the trustee.  Debtors will pay real estate taxes including assessment installments as they come due in the future.

ARTICLE VIII
Execution of the Plan

 Debtors intend to continue their farming operation during the term of the Plan.  Debtors will be working closely with animal nutritionists to improve dairy production and continue to supplement their income with their excavating business.  Projected income and expenses are reflected in Exhibit A.

ARTICLE IX
Modification to Plan After Confirmation

 The Debtors may request the Court to modify this Plan before or after confirmation in accordance with the provisions of 11 U.S.C. Section 1222 or Section 1229.

ARTICLE X
Retention of Liens and Incorporation of Documents

All creditors whose claims are treated as secured in this Plan shall retain his liens on the collateral securing his respective claims until such claims are paid in full in the amount allowed as secured. Except as modified by the terms of the Plan of Reorganization, all documents evidencing indebtedness and security in favor of said secured creditors remain the same and are incorporated herein by reference as if more fully set out in this Plan of Reorganization. This plan of Reorganization and the order confirming said Plan of Reorganization shall be recorded in the Office of the County Recorder of each county where a Mortgage modified herein is recorded and the recordation of this Plan of Reorganization shall constitute a modification of the terms and conditions of said instruments as set forth herein.

## ARTICLE XI
### General Provisions

1. Except as provided in the Plan, the order confirming the Plan vests all property of the estate of the Debtors free and clear of all liens and encumbrances.

2. The Court shall retain jurisdiction of the Debtors and their property for the term of the Plan.

## ARTICLE XXI
### Discharge

Upon the Debtors' compliance with the provisions of the Plan for the term of the Plan, the Court shall enter a discharge which discharges the Debtors from all claims provided for in the Plan except as provided in 11 U.S.C. Section 1222 (b)(5) and (9) and 11 U.S.C. Section 523(a).

Dated this __14__ day of __July__, 2014.

Respectfully submitted,

_____
Jesse J. Hagemeier

_____
Lucy N. Hagemeier

KALENDA LAW OFFICE

/e/ Robert L. Kalenda
Robert L. Kalenda
Attorney for Debtors
919 West St. Germain, Suite 2000
St Cloud, MN 56301
(320) 255-8840
Attorney License #53260

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:
**JESSE J HAGEMEIER and LUCY N HAGEMEIER**

Debtor(s).

**SIGNATURE DECLARATION**

Case No. **14-40436**

___ PETITION, SCHEDULES & STATEMENTS
___ CHAPTER 13 PLAN
___ SCHEDULES AND STATEMENTS ACCOMPANYING VERIFIED CONVERSION
___ AMENDMENT TO PETITION, SCHEDULES & STATEMENTS
___ MODIFIED CHAPTER 13 PLAN
_X_ OTHER (Please describe: **Modified Chapter 12 Plan**                    )

I [We], the undersigned debtor(s) or authorized representative of the debtor, *make the following declarations under penalty of perjury:*

- The information I have given my attorney and provided in the electronically filed petition, statements, schedules, amendments, and/or chapter 13 plan, as indicated above, is true and correct;
- The information provided in the "Debtor Information Pages" submitted as a part of the electronic commencement of the above-referenced case is true and correct;
- **[individual debtors only]** If no Social Security Number is included in the "Debtor Information Pages" submitted as a part of the electronic commencement of the above-referenced case, it is because I do not have a Social Security Number;
- I consent to my attorney electronically filing with the United States Bankruptcy Court my petition, statements and schedules, amendments, and/or chapter 13 plan, as indicated above, together with a scanned image of this Signature Declaration and the completed "Debtor Information Pages," if applicable; and
- **[corporate and partnership debtors only]** I have been authorized to file this petition on behalf of the debtor.

Date: **7-14-14**

X _____
Signature of Debtor or Authorized Representative

**JESSE J HAGEMEIER**
Printed Name of Debtor or Authorized Representative

X _____
Signature of Joint Debtor

**LUCY N HAGEMEIER**
Printed Name of Joint Debtor

Form ERS 1 (Rev. 10/03)